# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL B. FRAZIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2152 |
| v. | ) | |
| | ) | |
| THE PAUL REVERE LIFE INSURANCE COMPANY AND UNUM GROUP, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Michael B. Frazin sued defendants The Paul Revere Life Insurance Company and its parent company Unum Group in connection with Paul Revere's termination of his disability benefits. Defendants move to dismiss Counts I and IV of Frazin's complaint under Fed. R. Civ. P. 12(b)(6). R. 7. For the following reasons, the Court grants defendants' motion.

## Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *E.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

In 2009, Frazin stopped working as a particular type of stock options trader known as a "Market Maker" due to anxiety and depression. R. 1-1 ¶¶ 7-8, 13. Frazin was insured under a disability policy issued by Paul Revere, which provided coverage in the event that Frazin could no longer work as a Market Maker. *Id.* ¶ 16. Paul Revere approved Frazin's disability benefits claim in June 2009. *Id.* ¶¶ 24-30.

Paul Revere's policy does not prohibit Frazin from working in another gainful occupation; as long as he can no longer work as a Market Maker, he is entitled to benefits. *Id.* ¶¶ 16-18. Frazin informed a Paul Revere representative that he had returned to part-time work in a back office accounting position in June 2010, and Paul Revere continued to find benefits appropriate. *Id.* ¶¶ 33-41. Paul Revere asked an independent psychiatrist, Dr. Henry Conroe, to evaluate Frazin in August 2010,

2

and Dr. Conroe found it unlikely that Frazin "could return to trading" without "a recurrence of significant anxiety symptoms." *Id.* ¶ 39(c).

Paul Revere closed Frazin's claim and terminated benefits in October 2015 after finding an improvement in Frazin's condition. *Id.* ¶¶ 71-72. As part of the review that led to the closing of Frazin's claim, Paul Revere raised the issue of Frazin's part-time employment. *Id.* ¶¶ 52-54. A Paul Revere representative noted in April 2015 that "Frazin returned to gainful employment approximately January, 2011 but [didn't] notify us of that change until July, 2011," and further noted, "I don't see where we reacted to that change in status . . . . I'm not sure we ever clarified the pre-disability duties completely or compared/contrasted them to the current ones." *Id.* ¶ 53. Paul Revere also learned from a personal visit in 2015 and follow up internet research that Frazin had played poker since 2005, including competing in poker tournaments reported online. *Id.* ¶¶ 59-60. Dr. Conroe's August 2010 report had mentioned Frazin's poker playing, stating: "[Frazin's] falling asleep is affected by his playing internet poker prior to bedtime." *Id.* ¶ 39(b)

The psychiatry consultant from Paul Revere who concluded that Frazin could not return to his Market Maker job back in 2010 came to a different conclusion in 2015. *Id.* ¶¶ 40, 63. He determined in 2015 that: "(1) Frazin is involved in 'financial issues' [in his part-time job] without resurgence of anxiety; (2) the concern over relapse has not materialized; (3) Frazin seems gratified with capacity to use trading strengths in poker playing[;] and[ ] (4) Frazin is able to manage anxiety during poker tournaments." *Id.* ¶ 63. Frazin alleges that Paul Revere came to the

determination that he was no longer entitled to benefits and then "work[ed] backwards" to find justifications for that decision. *Id.* ¶¶ 56, 62.

Frazin submitted an internal appeal of Paul Revere's revocation of benefits. *Id.* ¶¶ 74-76. After receiving the appeal, Paul Revere asked its vocational rehabilitation analyst to compare poker playing with Frazin's prior employment as a Market Maker, and then asked its doctors for further review. *Id.* ¶ 77-81. One of the doctors noted that Frazin was "active in playing in and running high-stakes poker tournaments," which he found "would engage the same cognitive capacities as would his prior occupation." *Id.* ¶ 81. Frazin takes issue with Paul Revere allegedly ignoring the opinions of its own vocational rehabilitation analyst and Frazin's doctors in the course of rejecting his appeal. *Id.* ¶¶ 77-87.

Frazin sued Paul Revere and its parent Unum, asserting claims for declaratory relief (Count I), breach of contract (Count II), insurance bad faith under 215 ILCS 5/155 (Count III), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count IV). R. 1-1. Defendants removed the case from Illinois state court in March 2017 based on diversity jurisdiction. R. 1. Defendants answered Counts II and III and moved to dismiss Counts I and IV.

## Discussion

Defendants' motion to dismiss argues that Frazin has taken a "straightforward breach of insurance contract and § 155 [insurance bad faith] action" and improperly attempted to dress it up with declaratory judgment and ICFA claims. R. 8 at 3. For the reasons set forth below, this Court agrees.

4

## I.   ICFA (Count IV)

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002). "To succeed on a claim for deceptive conduct under the ICFA, [a p]laintiff must allege (1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *W. Howard Corp. v. Indian Harbor Ins. Co.*, 2011 WL 2582353, at *3 (N.D. Ill. June 29, 2011) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594 (Ill. 1996)).

For a plaintiff to state an ICFA claim against an insurer in particular, the plaintiff must allege something more than the factual allegations that support a claim for either (a) breach of contract or (b) tortious misconduct by an insurer under 215 ILCS 5/155. In *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897 (Ill. 1996), the Illinois Supreme Court explained that "[t]he [insurer misconduct] remedy provided by section 155" already "allows an extracontractual award" for cases where "the contractual remedy may not be sufficient." *Id.* at 904. And that extracontractual award does not include punitive damages. *Id.* "[A] plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct" and seek punitive damages only based on allegations that go beyond the "bad faith or unreasonable and vexatious conduct" required to support a § 155 claim. *Id.*

5

The *Cramer* Court instructed courts to "look beyond the legal theory asserted to the conduct forming the basis for the claim." *Id.*; *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("consumer-fraud and contract claims" cannot "rest on the same factual foundation"; "distinct deceptive acts" must be alleged). ICFA claims are "preempted by section 155" "[w]hen the conduct is merely a breach of contract or conduct proscribed by section 155." *Cook ex rel. Cook. v. AAA Life Ins. Co.*, 13 N.E.3d 20, 33 (Ill. App. Ct. 2014).

Here, Frazin's breach of contract and § 155 claims allege that defendants failed to properly investigate his disability claim, unreasonably interpreted the policy, selectively and erroneously interpreted medical information, ignored vocational evidence, "create[d] justifications, where none existed," and "unreasonably predetermine[ed]" its decision to deny Frazin his disability benefits. R. 1-1 ¶¶ 54-58, 60-61, 90-91, 95, 105, 109, 113, 115. Frazin's ICFA claim incorporates the same allegations used to support his breach of contract and § 155 claims (*id.* ¶ 116) and makes other similar allegations, but adds adjectives such as "deceptive," "false," and "pretextual." He alleges that defendants failed to properly investigate, engaged in "deceptive acts," took "false position[s]" on the interpretation of medical and vocational evidence, and "[i]ntentionally disregard[ed] the opinions and conclusions of medical and vocational professionals" "to create a pretextual basis for denying Frazin coverage." *Id.* ¶¶ 116, 120, 121. His ICFA claim seeks to recover for the same basic wrong as his contract and § 155 claims: "denying Frazin coverage and ending the Benefits" for improper reasons. *Id.* ¶ 120.

It is clear that Frazin's addition of conclusory adjectives like "deceptive" and "false" does not suffice to state an ICFA claim. *See, e.g., Greenberger*, 631 F.3d at 399 ("Greenberger insists that his consumer-fraud claim is based on more than a simple breach of contract because it alleges both a 'false promise' and a material 'omission,' both of which are included in the Consumer Fraud Act's definition of 'unfair or deceptive acts or practices.' These allegations, however, are nothing more than restatements of the claimed breach of contract, albeit using the language of fraud.").

Frazin's response argues that his ICFA claim does more than simply add adjectives. He says it "go[es] well beyond simple breach of contract" because it alleges that defendants "came to an unsupported conclusion to deny his benefits, and then worked backward to build a case in support." R. 21 at 7. Frazin points to allegations that defendants: (1) waited until Frazin appealed before hiring a vocational rehabilitation expert; (2) "unreasonably relied on the unsupported opinion of a 'hired gun' . . . doctor"; (3) intentionally disregarded contrary opinions of medical and vocational professionals; (4) reached a "pre-formed conclusion" about his entitlement to benefits; and (5) "lied when they claimed that he failed to disclose either his poker playing or his [part-time] work." *Id.* at 7-8.

The first four of these allegations are very similar to those in *W. Howard*. In that case, the plaintiff alleged that the insurer failed "to fairly investigate the claim," including by acting in "bad faith" during its investigation and "rest[ing] the denial of the claim on the actions or inaction" of plaintiff. 2011 WL 2582353, at *5.

7

The *W. Howard* court found that while these allegations supported a § 155 claim for "unreasonable and vexatious" conduct and "bad faith denial of a claim," they did not state a separate ICFA claim. *Id.* This Court finds the same with respect to Frazin's first four allegations. At bottom, these allegations accuse defendants of improperly investigating Frazin's claim and failing to pay. "When a purported tort claim boils down to an insurer's failure to pay," including failure to pay in "bad faith," "the remedies provided in § 155 and for breach of contract cover the claim and are sufficient and the tort claim must be dismissed." *Id.*

Frazin's fifth allegation that defendants lied comes closest to alleging "a deceptive act or practice"—the first element of an ICFA claim. *Id.* at *3. Some courts have found that an allegation "that an insurer is 'lying after the fact to avoid paying [a] claim' amounts to no more than [a] claim for denial of benefits and breach of contract, and is preempted by § 155." *Leona's Pizzeria, Inc. v. Nw. Nat. Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002) (quoting *Cramer*, 675 N.E.2d at 905). But in a case cited by Frazin, *Pekin v. Paul Revere Life Ins. Co.*, 2010 WL 2731063 (N.D. Ill. July 8, 2010), the court denied summary judgment on an ICFA claim based on evidence that the insurer "knowingly claimed the wrong date of [plaintiff's] disability when it in fact knew [plaintiff] was disabled beginning with his botched surgery," and made a subsequent claim about his occupation that it knew to be wrong. *Id.* at *8.

Even if certain after-the-fact lies by an insurer can support an ICFA claim, the Court does not find that Frazin has *plausibly* alleged "a deceptive act" by

8

defendants that "proximately caused" his alleged damage in this case. *W. Howard*, 2011 WL 2582353, at *3. First addressing the alleged poker playing lie, the complaint alleges that defendants "falsely claim[ed] that Frazin did not disclose his poker playing when he applied for benefits under the Policy, when the investigation notes prove that Frazin told Dr. Conroe in 2010 that he played online poker." R. 1-1 ¶ 120(e). But other complaint allegations support that defendants' alleged "false[ ] claim" was not false, but true. The complaint alleges that Frazin "applied for benefits under the Policy" in 2009, and started receiving benefits in 2009. *Id.* ¶¶ 23-30, 120(e). But the complaint does not allege that Frazin disclosed his online poker playing to Dr. Conroe until August 2010—well after he "applied for benefits under the Policy." *Id.* ¶¶ 39, 120(e). Furthermore, Dr. Conroe's notes from 2010 do not reflect the full extent of Frazin's poker playing. The notes simply say, "His falling asleep is affected by his playing internet poker prior to bedtime." *Id.*¶ 39(b). But in 2015, defendants learned that Frazin had been actively involved in playing poker since 2005, including playing in and running high-stakes poker tournaments reported online. *Id.* ¶¶ 59-61, 81. The Court finds Frazin's claimed falsehood dispelled by his own complaint allegations.

Turning to the alleged lie about Frazin's part-time work, the complaint alleges that defendants "falsely claim[ed] that Frazin did not disclose his part-time work . . . until July 2011 when [they] knew that Frazin told [a Paul Revere representative] . . . in June 2010." *Id.* ¶ 120(f). But even if Paul Revere's representative got the year wrong in her notes (2010 instead of 2011), Paul Revere

9

acknowledged that it knew about Frazin's part-time work years before it revisited his claim in 2015. The representative's April 2015 notes do not support that Paul Revere revisited Frazin's claim because it thought Frazin had not previously disclosed his part-time work—the notes acknowledge that he disclosed his part-time work years earlier—but because Paul Revere had not "clarified the pre-disabilities duties completely or compared/contrasted them to the current ones." *Id.* ¶ 53. Frazin does not plausibly allege that the inaccurate year reflected in Paul Revere's April 2015 notes was a cause of its denial of benefits and thus the damages Frazin claims he suffered.

Frazin's failure to plausibly allege a deceptive act or practice that proximately caused Frazin's damage also distinguishes this case from the other two Frazin cites finding that plaintiffs stated ICFA claims against insurers. In *Wheeler v. Assurant Speciality Prop.*, 125 F. Supp. 3d 834 (N.D. Ill. 2015), the plaintiff plausibly alleged that an insurer "pa[id] off a retained expert to render a contrary opinion so as to provide a basis for denying a valid claim" while "represent[ing] it was complying with its contractual obligations and working on settling the claim," which the court found rose "to the level of alleged fraud." *Id.* at 843. And in *Burress-Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679 (Ill. App. Ct. 2012), the plaintiff plausibly alleged that the insurer "continuously refus[ed] to honor Plaintiff's insurance claims," "consistently inform[ed] Plaintiff that the amounts were being disputed when in reality neither company was actively pursuing the issue, and . . .

ricochet[ed] Plaintiff back and forth between both companies regarding the outstanding amount." *Id.* at 689.

The allegations in *Wheeler* and *Burress-Taylor* go well beyond what is alleged here. And unlike in those cases, the Court finds that even if Frazin's complaint could be construed as pleading a distinct unfair or deceptive practice beyond the allegations underlying Frazin's breach of contract and § 155 claims, Frazin's ICFA claim as pleaded does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court therefore dismisses Frazin's ICFA claim (Count IV) without prejudice.[1]

## II. Declaratory Judgment (Count I)

Defendants make two arguments with respect to Frazin's declaratory judgment claim in Count I. *First*, they argue that several of Frazin's requests for declaratory relief duplicate the relief sought for Frazin's breach of contract claim, making the claim improper. "It is well settled that federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th

---

[1] Defendants also request dismissal of Frazin's request for punitive damages on his breach of contract and § 155 claims. These punitive damages requests are not separate claims, but parts of claims. And the Court does not have power to dismiss parts of claims on a Rule 12(b)(6) motion to dismiss. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."). But Frazin in his response to defendants' motion to dismiss "strikes his request for punitive damages contained in his request for relief in his Breach of Contract claim in Count II." R. 21 at 3 n.2. The Court therefore deems this request abandoned by Frazin and stricken from the complaint.

Cir. 1987). Courts regularly exercise this discretion to dismiss declaratory judgment claims that "fail[ ] to add anything not already raised in [a] breach of contract claim." *E.g.*, *Lansing v. Carroll*, 868 F. Supp. 2d 753, 763-74 (N.D. Ill. 2012); *see also Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 997-98 (N.D. Ill. 2001) ("[a] declaratory judgment action may be dismissed where a party seeks to enforce his rights after the fact" and has a separate claim "for breach of contract"); *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1283 (Ill. App. Ct. 2011) ("a court may dismiss [a declaratory judgment claim] if a party seeks to enforce his rights after the fact" and the "allegations are properly breach of contract allegations"). As the Illinois Appellate Court reasoned in *Karimi*, the purpose of a declaratory judgment claim is "to address a controversy after a dispute arises but before steps are taken that give rise to a claim for damages or other relief." 952 N.E.2d at 1283. Thus, "[a] claim for declaratory judgment" is an inappropriate "vehicle for presenting what are, in essence, plaintiffs' breach of contract allegations." *Id.*

In Count I, Frazin seeks after-the-fact declarations that he is "Totally Disabled as defined by the Policy, thus he is entitled to the Benefits," that defendants' coverage decision "is in violation of the Policy," and that defendants "must pay the Benefits to Frazin from February 16, 2016 to present." R. 1-1 at 22 (wherefore clause). These requests seek, in essence, Frazin's breach of contract relief in a different form (and minus the money damages Frazin seeks for breach of contract). Frazin does not dispute that the same determinations will be required to evaluate both claims. Because the Court finds that Frazin's breach of contract claim

is the better "vehicle" to resolve these issues, it exercises its discretion to dismiss Frazin's duplicative requests for relief. *See Karimi*, 952 N.E.2d at 1283; *see also Lansing*, 868 F. Supp. 2d at 763-64 ("Because the declaratory judgment claim (Count I) fails to add anything not already raised in the breach of contract claim (Count II), in an exercise of discretion the court dismisses Count I.").

*Second*, defendants argue that Frazin's remaining declaratory request improperly seeks prospective relief. "[T]he Seventh Circuit has held that an order stating that a plaintiff is entitled to receive future [insurance] benefits is inappropriate 'unless there [is] complete repudiation or renunciation of the contract.'" *Chaudhry v. Provident Life & Accident Ins. Co.*, 2014 WL 3511529, at *22 (N.D. Ill. July 16, 2014) (quoting *Morgan v. Aetna Life Ins. Co.*, 157 F.2d 527 (7th Cir. 1946), and citing *Trainor v. Mut. Life Ins. Co. of New York*, 131 F.2d 895 (7th Cir. 1942)); *see also Shyman v. Unum Life Ins. Co. of Am.*, 2002 WL 31133244, at *1 (N.D. Ill. Sept. 20, 2002) ("Whether Shyman will be entitled to disability benefits in the future depends upon certain conditions precedent—*i.e.*, whether he meets the terms and conditions for coverage in the future. And as the Seventh Circuit held in *Morgan*, such conditional payments cannot be enforced until due.").

The Court agrees with defendants that Frazin seeks an improper, prospective declaration "[o]rdering that Paul Revere must . . . continue making monthly payments as required by the policy." R. 1-1 at 22 (wherefore clause). Frazin attempts to defend this request because it is qualified by the language "as required by the policy." But the same was true in *Shyman*, *Morgan*, and *Trainor*, and it did

13

not save those plaintiffs' claims. *See Shyman*, 2002 WL 31133244, at *1 ("In both *Morgan* and *Trainor*, the district courts granted the exact relief Shyman seeks here, ordering that the insured was entitled to future disability benefits *as long as the insured met the terms and conditions for coverage under the insurance policy*. In both cases, the Seventh Circuit modified or reversed.") (emphasis added). As in *Chaudhry*, Frazin "does not argue that [defendants] repudiated or renounced the Policy, and he does not even attempt to distinguish *Morgan* and *Trainor* on factual or legal grounds." 2014 WL 3511529, at *22. The Court therefore dismisses Frazin's request for prospective relief along with the rest of his declaratory judgment claim (Count I). That claim is dismissed with prejudice.

## Conclusion

For these reasons, the Court grants defendants' motion to dismiss (R. 7). Frazin's declaratory judgment claim (Count I) is dismissed with prejudice, and his ICFA claim (Count IV) is dismissed without prejudice.

If Frazin believes he can cure the deficiencies identified in this opinion in his ICFA claim, he may file a motion for leave to file an amended complaint on or before April 20, 2018. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint. Should Frazin choose to file such a motion, defendants should not respond unless ordered to do so by the Court.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: March 30, 2018